NIEMEYER, Circuit Judge,
concurring in part and dissenting in part:
In this case, the State of North Carolina sues the Tennessee Valley Authority (“TVA”) under the North Carolina common law of nuisance to enjoin the way that the TVA operates its coal-fired power plants in other States, namely Tennessee, Alabama, and Kentucky. North Carolina alleges that the lawful emissions from the TVA’s power plants in other States travel downwind and reach North Carolina airspace, where they damage human health and the environment in North Carolina. Even though such emissions are regulated by and in compliance with the federal Clean Air Act and State law at the location of the plants, North Carolina contends that the emissions, whether permitted under applicable statutory laws, nonetheless create a public nuisance under North Carolina common law.
The threshold question presented to us is whether the TVA, a federal agency, is immune from such a suit. Arguing that it is not, North Carolina points to waivers of immunity contained in the TVA Act, 16 U.S.C. § 831e, which provides that the TVA “may sue and be sued in its corporate name,” and in the Clean Air Act, 42 U.S.C. § 7418(a), which provides that every agency of the federal government is subject to and must comply with “all Federal, State, interstate, and local requirements, administrative authority, and process and sane- *354 tions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity.” (Emphasis added). The majority concludes that North Carolina may proceed under either waiver, as either is sufficiently broad to authorize North Carolina’s suit against the TVA. While I agree that the language of both statutes is sufficiently broad to authorize the district court to consider the North Carolina suit on its merits, I conclude that 16 U.S.C. § 831c must be read in light of the Constitution’s separation of powers doctrine, which precludes a suit challenging a governmental agency’s exercise of its discretionary functions. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); McMellon v. United States, 387 F.3d 329 (4th Cir.2004) (en banc), cert. denied, 544 U.S. 974, 125 S.Ct. 1828, 161 L.Ed.2d 724 (2005).
The TVA was created in 1933, during the Depression, as a federal agency to implement major national programs and policies. And as the agency created to carry out the important work of the federal government that transcends any individual State’s interests, it is constitutionally protected from State suits initiated by a State disagreeing with congressional programs and policies. In connection with the particular issues raised in this case, the TVA was authorized by Congress to employ available technology for the generation of power, including the very coal-fired generators that North Carolina complains about in this action. For decades, these generators have provided energy to a broad, multistate area of the country and, to be sure, have produced emissions that tend to pollute. But the emissions were a tradeoff inherent in the project created by Congress, and Congress made the governmental choice of providing the benefits given by the TVA at the expense of some clean air, even if clean air was an important policy of any given State. See Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), affirming, In re Texas City Disaster Litigation, 197 F.2d 771 (5th Cir.1952) (en banc) (finding the TVA immune from suit over an explosion of ammonium nitrate fertilizer being shipped during World War II, based on the fact that the tortious conduct involved decisions balancing safety risks against cost and production schedule benefits of expediting manufacturing and shipping to accomplish foreign aid goals). If the old technology impliedly authorized by Congress from the beginning of the TVA can be updated or replaced to provide less pollution, the decision would have to be a federal decision based on a number of discretionary factors balancing the environmental risks with the economic viability of the program. But it cannot be for any one State to dictate to Congress or an agency that Congress creates how it must carry out its discretionary functions. Discretionary governmental decisions are protected from State intervention by the Constitution through the doctrine of separation of powers and the Supremacy Clause.
Against this incontrovertible background, I cannot conclude that in authorizing the TVA “to sue and be sued,” Congress intended to traverse separation of powers principles and authorize a State suit against the federal agency questioning the fundamental decisions of the federal government to create the TVA and build coal plants to provide energy and thereby inherently authorize some emissions that are within federal and state regulatory standards. Such a conclusion tends to stand the federal structure on its head, *355 permitting States to disagree with federal policies and dismember projects undertaken by the federal government in accordance with federal authority. Allowing such a suit without an explicit waiver of sovereign immunity with respect to discretionary functions is no different than subjecting the federal government to suits in other analogous contexts — which we have recognized is prohibited — such as suits challenging the decision to build a dam across a navigable waterway, or claiming damage caused by the government’s decision to change the course of the Missouri River, or claiming damages caused by the federal government in its search for illegal drugs. See McMellon v. United States, 387 F.3d 329, 342 (4th Cir.2004) (en banc), cert. denied, 544 U.S. 974, 125 S.Ct. 1828, 161 L.Ed.2d 724 (2005). In McMellon we held that “the discretionary function exception embodies separation-of-powers principles that are important enough to require courts to apply a discretionary function exception to statutes that are silent on the issue.” Id. at 344; see also Tiffany v. United States, 931 F.2d 271, 276-77 (4th Cir.1991) (same); Duke Power Co. v. Greenwood County, 91 F.2d 665, 674 (4th Cir.1937), aff'd, 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381 (1938); Ferris v. Wilbur, 27 F.2d 262 (4th Cir.1928).
For these reasons, I conclude that our decisions in McMellon and the other similar cases apply, precluding our finding that a federal statute authorizing the TVA to be sued but remaining silent on whether it could be sued for discretionary functions should amount to a waiver of immunity for making discretionary decisions.
The Clean Air Act, 42 U.S.C. § 7401 et seq., however, presents a different question inasmuch as it is a competing federal governmental policy that directly implicates the emissions from TVA’s coal-fired plants. In that Act, Congress did subject the TVA and other federal agencies to suits in the limited circumstance where the federal agency fails to meet federal or State “requirements ... respecting the control and abatement of air pollution.” See 42 U.S.C. § 7418(a). I agree with the majority that “requirements” cannot be cabined to mean objective, quantifiable State standards, as urged by the TVA. But the waiver is nonetheless limited to violations of State requirements “respecting the control and abatement of air pollution.” Id. (Emphasis added). We do not decide now whether North Carolina common law creates such a requirement, and I agree that we should remand this case to the district court to determine, under North Carolina common law, whether that law has defined a tort imposing a “requirement respecting the control and abatement of air pollution.” If the common law does, then the suit for violation of that law is authorized by the waiver contained in § 7418(a) of the Clean Air Act, even if the emissions are the product of a discretionary function.
Accordingly, I concur in the judgment but dissent from the rationale supporting that judgment to the extent it is inconsistent with what I have stated in this separate opinion.